UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

**Filed Under Seal**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2014 MAR 26  AM 11:

WILLIAM W. BLE
CLERK

**14-688**

**SECT. C MAG. 2**

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN AND JANE DOES 1-100, and XYZ CORPORATIONS 1-100, <br><br> Defendants. | Civil Action No.: <br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiff World Wrestling Entertainment, Inc. ("WWE"), by and through its undersigned attorneys, alleges the following in support of its Complaint against Defendants John and Jane Does and XYZ Corporations.

## NATURE OF THE CASE

1.       This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and related state law claims for trademark infringement, dilution and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's registered and unregistered trademarks and service marks.  WWE brings this action to (i) protect its reputation for selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming public by Defendants; (iii) retain control over the substantial goodwill associated with the numerous registered and unregistered trademarks and service marks being unlawfully exploited by Defendants; and (iv) avoid thousands of irretrievably lost sales.

Fee 400.00
Process
Dktd
CRmDep
Doc. No.

2.    To achieve these goals, WWE, through an <u>Ex</u> <u>Parte</u> Motion for Temporary Restraining Order; Order for Seizure of Counterfeit Marked Goods; and Order to Show Cause Why a Preliminary Injunction Should Not Issue, seeks an order from this Court authorizing the seizure of:

> (i) all counterfeit merchandise found in the possession, custody or control of Defendants that bears any of WWE's registered and/or unregistered marks, any confusingly similar marks, or the names or likenesses of any of its wrestlers;

> (ii) any means of making such counterfeit merchandise; and

> (iii) all records documenting the manufacture, receipt, distribution, offering for sale or sale of such counterfeit merchandise.

WWE seeks to have all such counterfeit merchandise and associated documents and materials seized until a hearing can be held before this Court to determine the disposition of any such goods, materials and/or documents seized.

3.    WWE also seeks a TRO and a preliminary and permanent injunction barring Defendants from unlawfully infringing WWE's intellectual property rights through Defendants' manufacture, distribution and/or sale of counterfeit merchandise bearing any of WWE's registered or unregistered marks, the names or likenesses of its wrestlers, or any other word or name that is likely to cause confusion or mistake or to deceive during WWE's nationwide tour of live entertainment events beginning in New Orleans, Louisiana on April 3, 2014 with WWE's Wrestlemania® XXX weekend and ending March 23, 2015 (WWE's final live event before Wrestlemania® XXXI) ("WWE's 2014-2015 Live Events").   WWE's Wrestlemania® XXX weekend will consist of various events taking place in the New Orleans, Louisiana area from April 3 to April 7, 2014, including, but not limited to, (1) WWE's Wrestlemania® Axxess event at the New Orleans Convention Center from April 3-6; (2) WWE's Hall of Fame event at the

Smoothie King Center on April 5; (3) WWE's Wrestlemania® XXX event at the Mercedes-Benz Superdome on April 6; and (4) WWE's Monday Night Raw event at the Smoothie King Center on April 7 (collectively, the "Wrestlemania® XXX Weekend Events").

## PARTIES

4.      Plaintiff WWE is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

5.      Defendants John and Jane Does and XYZ Corporations, whose precise identities are not yet known to WWE, are individuals and entities who, upon information and belief, have been doing business, continue to do business, or will be doing business in the Eastern District of Louisiana, or are now conspiring and otherwise traveling to WWE's 2014-2015 Live Events at the other states listed in Exhibit 4 attached hereto.  The Complaint will be amended to include the names of individuals and companies if and when they permit themselves to be identified.

6.      Upon information and belief, all Defendants are acting in concert and active participation with each other in connection with the wrongful acts alleged below.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the Defendants because they reside in and/or have transacted or will be transacting business in this State, and have caused harm or tortious injury in this State by acts within this State.  Upon information and belief, all Defendants are individuals and entities who will be present in the Eastern District of Louisiana in connection with the claims asserted below and/or who, at all times relevant hereto, have done business, continue to do business, or will be transacting business in the Eastern District of Louisiana.

8.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b).  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), with respect to the state law claims asserted herein.

9.    This Court is an appropriate venue for this action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to WWE's request for relief will occur in this district.

## FACTUAL BACKGROUND

### A.    WWE's Business And Marks

10.    Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has provided to the public live and televised wrestling and entertainment events and services (the "WWE Wrestling Services") under the service mark WORLD WRESTLING ENTERTAINMENT®.  WWE also exclusively owns or controls all right, title and interest in the names, likenesses and rights of publicity for its current wrestlers.  In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under the WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks (collectively, the "WWE Marks").  A listing of those WWE Marks, both currently pending or registered with the United States Patent and Trademark Office and unregistered but exclusively owned or controlled by WWE, is set forth in Exhibits 1 and 2 hereto, respectively.  Among the marks most important to this action are:

| Mark | U.S. Trademark Registration Nos. |
|---|---|
| WORLD WRESTLING ENTERTAINMENT | 2,772,677; 2,757,600; 2,757,599; 2,754,499 |

| WWE and WWE logos | 2,772,683; 3,056,074; 2,799,228; 2,751,437; 2,751,436; 2,765,751; 2,757,597; 2,754,495; 2,757,596 |
|---|---|
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339 |

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise.

11.     WWE's 2014-2015 Live Events are a multi-city presentation of live wrestling entertainment events throughout the United States and in many other cities throughout the world. The itinerary of WWE's 2014-2015 Live Events is attached hereto as Exhibit 4.  Most major U.S. cities will have a WWE live event appear in their city at least once or twice a year.  WWE's 2014-2015 Live Events include all of the following types of programs:  (1) live, pay-per-view events; (2) live, nationally-televised shows; and (3) live, non-televised events known as "house shows."  In addition to generating revenues through ticket sales and promoting its pay-per-view events, WWE sells a significant portion of WWE Merchandise at its 2014-2015 Live Events.

12.     WWE presents regular WORLD WRESTLING ENTERTAINMENT® programs featuring live wrestling events on a pay-per-view basis twelve (12) times a year.  WWE's annual marquee pay-per-view event is called "Wrestlemania®" which sells for $59.95 per view. Wrestlemania® is considered one of the "Big Four" original annual WWE pay-per-view events, along with SummerSlam®, Royal Rumble® and Survivor Series®.

13.     WWE's pay-per-view events are the biggest wrestling events of the year for WWE and offer an occasion for, inter alia, determining and crowning WWE's various champions and/or elucidating the various story lines developed by WWE throughout the year. These live pay-per-view events are extensively promoted and widely attended and viewed.

14.    For example, the first Wrestlemania®, Wrestlemania® I, was held March 31, 1985, at Madison Square Garden in New York City.  Subsequent Wrestlemania®'s have occurred in such sites as the Pontiac Silverdome in Pontiac, Michigan (Wrestlemania® III), which drew over 90,000 spectators; Atlantic City, New Jersey (Wrestlemania®'s IV and V); and Indianapolis, Indiana (Wrestlemania® VIII).  The 2002 Wrestlemania at the Skydome in Toronto drew over 68,000 spectators and over one million pay-per-view customers.    The 2010 and 2011 Wrestlemania®'s (Wrestlemania® XXVI and XXVII) drew over 70,000 spectators at University of Phoenix Stadium in Glendale, Arizona and the Georgia Dome in Atlanta, Georgia and over 890,000 pay-per-view customers and one million pay-per-view customers, respectively.   Last year's Wrestlemania® XXIX at MetLife Stadium in New Jersey drew a sold out crowd of 80,676 spectators from all 50 states as well as 34 foreign countries, and exceeded one million global pay-per-view buys.

15.    WWE's Wrestlemania®'s also draw record merchandise sales for the venues.  For example, in 1998, WWE held its annual Wrestlemania® pay-per-view event, Wrestlemania® XIV, at the Fleet Center in Boston, Massachusetts.  WWE Merchandise sales at Wrestlemania® XIV set a record for the Fleet Center for sales per capita.   Similarly, in 2000, WWE held Wrestlemania® XVI at the Pond in Anaheim, California, and again set a venue record for merchandise sales per capita.  In 2002, WWE held Wrestlemania® XVII at the Skydome in Toronto, Canada, and averaged over $18.00 per attendee in merchandise sales.

16.    More recently, Wrestlemania® XXVII and XXVIII had merchandise sales per capita of approximately $19.00 and $18.00, respectively and Wrestlemania® XXVIII and XXIX yielded spending in tickets, merchandise and retail of approximately $10 million and $14.7 million, respectively.

17.     In addition to its pay-per-view events, WWE currently presents two weekly WWE programs called "RAW®" and "Smackdown®" that feature wrestling entertainment programming every Monday and Friday night nationwide on the USA Network cable television channel and the SyFy cable television channel, respectively.   WWE also presents weekly programs called "NXT®," "WWE Superstars®" and "WWE Main Event®" that are shown on WWE's new 24/7 live streaming internet network.  RAW® and WWE Main Event® are presented live from various WWE live events around the country, and NXT®, Smackdown®, and WWE Superstars® are pre-recorded live WWE events.

18.     In retail stores nationwide and via on-line catalogs, WWE sells a large variety of WWE Merchandise featuring the WWE Marks.  The WWE Merchandise typically displays prominently the name and logo of the company, the WWE Marks, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs.  Examples of WWE Merchandise are listed in Exhibit 3 attached hereto, and include, without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, wrestling masks, sunglasses, key rings, action figures, posters, and DVDs.

**B.     Counterfeiting At Previous Live Events**

19.     For many years, WWE has sold the WWE Merchandise at and in connection with its live events.  WWE's venue merchandise business consists of the design, sourcing, marketing and distribution of numerous WWE-branded products, such as t-shirts, caps and other novelty items, all of which feature WWE's Superstars, Divas and/or logos, including WORLD WRESTLING ENTERTAINMENT®, WWE®, the WWE® logo, and/or one or a number of other WWE Marks included in Exhibits 1 and 2 hereto.  In 2013, 2012 and 2011, venue merchandise

net revenues were $19.4 million, $18.8 million, and $18.3 million and represented approximately 4-5% of WWE's total net revenues for each year.

20.     WWE Merchandise is of the highest quality and grade. These genuine goods are currently being sold only at authorized locations throughout the United States including, but not limited to, the house show arenas and live event venues, and retail stores in the Eastern District of Louisiana.

21.     Based upon information and belief, WWE's past experiences and its investigation into the matter, WWE has learned that Defendants, alone and in conjunction with other, similarly situated individuals and entities, specifically numerous peddlers and manufacturing and distribution companies, will be attempting to sell or distribute goods of inferior quality to those sold, or licensed for sale, by WWE at or near WWE's 2014-2015 Live Events. These goods, which are marked with imitations or counterfeits of the WWE Marks, include, inter alia, T-shirts, sweatshirts, caps, wrestling masks, DVDs, posters, and other souvenirs, merchandise and memorabilia ("Counterfeit Merchandise"). In addition, the merchandise sold by Defendants not only is counterfeit but the merchandise also threatens public safety. There is no way to know the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts and the safety of the design of other goods, such as wrestling masks, that previously have been seized.

22.     For example, at WWE's Wrestlemania® XXV event, held on April 5, 2009, in Houston, Texas, WWE encountered an overwhelming number of individuals, who came from all over the United States, distributing and selling Counterfeit Merchandise. With the aid of an ex parte TRO and seizure order granted by the United States District Court for the Southern District

8

of Texas, WWE was able to gain some measure of control over such counterfeiting by seizing more than 1,000 articles of counterfeit merchandise at the Wrestlemania® XXV event alone.

23.    At WWE's Wrestlemania® XXVII weekend events, held March 30-April 4, 2011, in Atlanta, Georgia, WWE similarly encountered an untold number of individuals, who came from all over the United States, distributing and selling Counterfeit Merchandise.  With the aid of an ex parte TRO and seizure order granted by the United States District Court for the Northern District of Georgia, WWE was able to gain some measure of control over such counterfeiting by seizing more than 3,000 counterfeit t-shirts during the Wrestlemania® XXVII weekend events. The t-shirts were being sold for at least $10 per shirt.

24.    At the Wrestlemania® XXVIII Weekend Events in Miami, Florida in 2012, WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an ex parte TRO and seizure order issued by the United States District Court for the Southern District of Florida, WWE seized hundreds of counterfeit shirts.  Most of those shirts were child-sized and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.  In addition, two of the counterfeiters who were served in Miami in 2012 had been served previously at Wrestlemania® XXIV in Orlando, Florida in 2008 pursuant to an ex parte TRO and seizure order from the District Court for the Middle District of Florida.

25.    Last year, at the Wrestlemania® XXIX Weekend Events in East Rutherford, New Jersey, WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an ex parte TRO and seizure order issued by the United States District Court for the District of New Jersey, WWE seized thousands of counterfeit T-shirts, DVDs, action figures and posterboards.  WWE also obtained a consented to permanent

9

injunction against one of the counterfeiters that WWE served in connection with the court's TRO and seizure order.

26.    At no time has WWE authorized Defendants to manufacture, distribute, offer for sale or sell any Counterfeit Merchandise, nor any WWE Merchandise or goods or materials bearing the WWE Marks not specifically licensed and approved by WWE.

27.    As described more fully in the Declarations of Richard S. Hering and Lauren Dienes-Middlen, Esq., filed concurrently herewith and incorporated herein by reference, WWE has undertaken, and continues to undertake significant, extensive measures to guard against the unauthorized distribution and sale of Counterfeit Merchandise at live events.

28.    Based upon its investigation into the matter, and as described more fully in the Hering and Dienes-Middlen Declarations, WWE has observed that the design, materials and quality of most of the Counterfeit Merchandise being distributed and sold at WWE live events throughout the United States is poor and uniform from event to event and city to city.  Indeed, WWE has encountered Counterfeit Merchandise that lists multiple WWE live events making it easy for such merchandise to be sold from venue to venue.  Based in part on this uniformity, WWE has concluded that Defendants distributing and selling Counterfeit Merchandise are part of a concerted operation that travels from venue to venue selling unauthorized Counterfeit Merchandise likely acquired from common sources of manufacture.  Many of the individual Defendants sell the same Counterfeit Merchandise in different cities.   Groups of these individuals travel together from event to event, including in the Eastern District of Louisiana.

29.    Thus, without the aid of a federal court order authorizing seizure of Counterfeit Merchandise, WWE is unable to combat the network of individuals and entities distributing and selling unauthorized Counterfeit Merchandise at WWE's nationwide 2014-2015 Live Events and

is effectively rendered unable to protect its rights, and the rights of the consuming public, against the unauthorized and unlawful distribution and sale of Counterfeit Merchandise at WWE's 2014-2015 Live Events.

30.     As demonstrated by the Hering and Dienes-Middlen Declarations, throughout the past several years of WWE live events, WWE has encountered numerous sellers of Counterfeit Merchandise at various locations throughout the United States.

31.     During the course of WWE's enforcement of TROs, Seizure Orders and nationwide preliminary injunctions entered by the District Court for the Southern District of Texas, the District Courts for the Middle and Southern Districts of Florida, the District Court for the Northern District of Georgia, the District of New Jersey and prior similar orders, including those entered by the District Court for the District Court of Massachusetts and the District Courts for the Eastern and Southern Districts of New York, WWE seized thousands of counterfeit T-shirts, caps, wrestling masks, posters, DVDs, pictures and other items of Counterfeit Merchandise marked with imitations of the WWE Marks. As a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to avoid hundreds of thousands of dollars in lost sales, as well as irreparable injury to WWE's reputation and goodwill with the consuming public. In addition, as a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to protect the safety of the public - the targeted children - against potential harmful effects of such inferior and potentially dangerous goods.

32.     Pursuant to past TROs, Seizure Orders and nationwide preliminary injunctions, WWE has posted a bond and proceeded at all times with the utmost caution in seizing only those goods that WWE's enforcement team determined to be Counterfeit Merchandise. WWE enforced the TROs, Seizure Orders and nationwide preliminary injunctions in a manner designed

to protect its trademarks and service marks without compromising the rights of the Defendants in those actions.

33.     Many of the individuals served under these prior TROs, Seizure Orders and nationwide preliminary injunctions refused to identify themselves, refused to accept service, or both.  Moreover, none of the Defendants in those actions came forward with objections to the court.   Such behavior is typical of counterfeiters who distribute and sell unauthorized merchandise at live entertainment events.

34.     The TROs, Seizure Orders and nationwide preliminary injunctions issued in the past enabled WWE to effectively police distribution and sale of Counterfeit Merchandise throughout WWE's nationwide series of live events.   The Defendants' conduct, however, represents a continuing problem, not yet abated, and the only effective relief available to WWE is the <u>ex parte</u> seizure process.

35.     Without the ability to seize Counterfeit Merchandise at and near WWE's 2014-2015 Live Event venues, including, but not limited to, at or near the Wrestlemania® XXX Weekend Events in the New Orleans, Louisiana area from April 3-7, 2014, WWE stands to lose untold and irrecoverable sums in merchandise sales and suffer incalculable, irreparable damage to its reputation and goodwill in addition to the harm such counterfeiting will cause to the consuming public. In addition, WWE will not be able to protect the safety of the public - the targeted children - against potential harmful effects of such inferior and potentially dangerous goods.

## C.   <u>Expected Counterfeiting At Wrestlemania® XXX Weekend Events in New Orleans and Elsewhere</u>

36.     WWE's Wrestlemania® XXX Weekend Events are scheduled for April 3, 2014 to April 7, 2014.  The events include (1) WWE's Wrestlemania® Axxess event at the New Orleans

Convention Center from April 3-6; (2) WWE's Hall of Fame event at the Smoothie King Center on April 5; (3) WWE's Wrestlemania® XXX event at the Mercedes-Benz Superdome on April 6; and (4) WWE's Monday Night Raw event at the Smoothie King Center on April 7. WWE's 2014-2015 Live Events will proceed throughout the United States according to the schedule attached hereto as Exhibit 4.

37. In connection with its Wrestlemania® XXX Weekend Events and its nationwide 2014-2015 Live Events, WWE has advertised and promoted heavily, and will continue to advertise and promote heavily, the WWE Marks in interstate commerce.

38. As the foregoing demonstrates, the only effective means of protecting WWE's trademarks and service marks from unlawful counterfeiting by Defendants at WWE's 2014-2015 Live Events is through the ex parte seizure process, which provides WWE with the ability to fight against unlawful counterfeiting. To maintain any meaningful defense against the unlawful distribution and sale by Defendants of Counterfeit Merchandise at WWE's 2014-2015 Live Events, which is an ongoing problem inherent in the live entertainment industry, WWE must be allowed to proceed with the ex parte seizure process.

39. Indeed, Defendants are habitual "repeat offenders" who refuse, even when apprehended, to identify themselves or accept service, much less appear in court in connection with the seizure of their unlawful goods. Aware of the illegality of their activities, these individuals and groups, if caught, will quickly hide or dispose of their Counterfeit Merchandise, or load it into a waiting vehicle and lock the vehicle or drive it away. Most sellers have only a small number of items at any given time and their supply is replenished after being seized by WWE. In fact, Plaintiff encountered this exact modus operandi at last year's Wrestlemania®

XXIX events.  Thus, Defendants are organized and acting in concert with one another and are making a conscious effort to hide their identities.

40.     Defendants are typically street peddlers, without offices, identification, licenses or addresses.  In this manner, they can avoid having to respond to an ordinary civil lawsuit and thus are essentially immune from an injunction unless it is accompanied by authority to seize Counterfeit Merchandise.

41.     For example, through the enforcement of ex parte TROs, Seizure Orders and nationwide preliminary injunctions, WWE has attempted to serve hundreds of counterfeiters and has seized thousands of items of Counterfeit Merchandise.   Most of the apprehended counterfeiters, who not only appear at the venues where the event is occurring but also in the parking areas at the venues and on the roads that led to the venues, refused to identify themselves and refused to accept service, and none of them came forward to respond formally in court. WWE would welcome their appearances in court, as it would permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.

42.     The Defendant bootleggers will continue, undaunted, to attempt to peddle Counterfeit Merchandise at WWE's 2014-2015 Live Events, and WWE's only means of keeping their conduct under control is through the ex parte seizure process.

43.     Based upon the foregoing, and based upon its experience enforcing earlier TROs, Seizure Orders and nationwide preliminary injunctions as explained in the Hering and Dienes-Middlen Declarations, WWE believes and therefore avers that Defendants will follow WWE's 2014-2015 Live Events from city to city, throughout the country, selling Counterfeit

Merchandise. Defendants constitute bootlegging rings that operate in this District by obtaining Counterfeit Merchandise from a small number of manufacturers.

44.    On information and belief, Defendants will continue to attempt to sell Counterfeit WWE Merchandise at WWE's 2014-2015 Live Events, including at the Wrestlemania® XXX Weekend Events.

45.    Ex parte seizure relief is thus essential if WWE is to maintain a defense against and effectively police the unlawful activities of Defendants at the nationwide series of WWE 2014-2015 Live Events, including at the Wrestlemania® XXX Weekend Events in New Orleans, Louisiana.  Without such relief, WWE will have no effective remedy against Defendants' continued distribution and sale of Counterfeit Merchandise that infringes WWE's registered and unregistered trademarks and service marks, threatens lost sales in untold dollars, deceives the consuming public into mistakenly believing they are purchasing authorized, licensed, high quality goods, and poses a potential safety risk because of the inability for WWE to control the quality of the materials used by the bootleggers.

**D.    Irreparable Harm To WWE**

46.    Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise will deceive the consuming public into believing that they are purchasing genuine goods which have been manufactured, authorized, or approved by WWE, and will likely cause confusion and mistake in that consumers are likely to assume that WWE has manufactured, authorized, or approved the Counterfeit Merchandise sold by Defendants.

47.    In addition to causing WWE to suffer incalculable, irrecoverable and irreparable lost sales, Defendants' manufacture, distribution and sale of inferior quality Counterfeit Merchandise displaying the WWE Marks will irreparably injure WWE's reputation for the

15

manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia and poses a potential safety risk to the public because WWE is unable to control the quality of the materials used by the bootleggers. Indeed, there is no way to know the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts and the safety of the design of other goods, such as wrestling masks, that previously have been seized. For example, much of the counterfeit merchandise seized at the Wrestlemania® XXVIII and XXIX Weekend Events consisted of child-sized t-shirts and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.

48.    Based on WWE's prior encounters with sellers of Counterfeit Merchandise at live events, other WWE events, and in the retail and wholesale distribution context, on information and belief, WWE alleges that, if Defendants are notified that WWE has filed this lawsuit and has filed a Motion for TRO, Defendants will cause the unauthorized Counterfeit Merchandise to be dispersed and, thereafter, sold at other locations on or near the premises of the event arenas or elsewhere with the result that WWE will be unable to obtain an effective remedy for Defendants' wrongful conduct.

## COUNT I
### Trademark Infringement (Registered Marks)

49.    Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 48 of this Complaint.

50.    The WWE Marks on WWE Merchandise have become well and favorably known to consumers throughout the United States, including Louisiana, as an indication of goods emanating from or authorized by a single source, i.e., WWE.

16

51.     Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

53.     Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT II
### Trademark Infringement (Unregistered Marks) And False Designation Of Origin

54.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 48 of this Complaint.

55.     Defendants' use of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's unregistered trademarks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Defendants' use of the WWE Marks on the Counterfeit Merchandise creates a false designation of origin and a false representation of Defendants' goods, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

58.     Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined, will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT III
## Federal Trademark Dilution

59.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 48 of this Complaint.

60.     As a result of the duration and extent of WWE's use and promotion of the WWE Marks, at least WWE's WWE®, WWE® logo, Raw®, Smackdown®, Wrestlemania®, SummerSlam®, Royal Rumble®, Survivor Series® and names and likenesses of several of its current wrestlers are famous and highly distinctive.

61.     Defendants are making commercial use of these WWE marks in interstate commerce.

62.     Defendants' use began long after these WWE marks became famous.

63.     Defendants' use of these WWE marks dilutes the distinctive quality of the marks by diminishing the capacity of the marks to identify and distinguish WWE's goods and services, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     Defendants willfully intended to trade on WWE's reputation and goodwill, and to cause dilution of WWE's famous marks.

65.     Defendants' conduct has caused and continues to cause WWE immediate and irreparable injury. WWE lacks an adequate remedy at law.

## COUNT IV
### Trafficking In Counterfeit Goods

66.　　Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 48 of this Complaint.

67.　　Defendants' souvenirs, merchandise, and memorabilia constitute goods bearing counterfeit marks. Defendants have trafficked these goods in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) and unless restrained and enjoined, will continue to traffic these goods, all to WWE's monetary damage and irreparable harm.

## COUNT V
### Trademark Infringement and
### Unfair Competition, Under Lousiana Law

68.　　Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 48 of this Complaint.

69.　　The WWE Marks are marks valid at common law.

70.　　Defendants' unauthorized use of the WWE Marks is likely to cause confusion, or mistake or to deceive as to the source of Defendants' goods and services, which constitutes trademark infringement and dilution under the common law of Lousiana.

71.　　Defendants' unauthorized use of the WWE Marks constitutes trademark infringement, trademark dilution and unfair competition under Louisiana common law and La. Rev. Stat. §§ 51:222, 51:223.1 and 51:1401 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff World Wrestling Entertainment, Inc. respectfully prays:

1.　　That this Court grant a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and each of his, her, or their partners, associates, agents, servants, and employees, and all other bootleggers acting in concert therewith or having

knowledge thereof, from manufacturing, distributing, offering for sale or selling Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any other mark, word, or name similar to the WWE Marks in a manner which is likely to cause confusion or mistake or to deceive.

2.    That this Court order that (a) all Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia referring to or bearing any of the WWE Marks or any confusingly similar marks and (b) records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale, or distribution of Counterfeit Merchandise, found in the possession, custody, or control of Defendants be seized until a hearing can be held before this Court to determine the disposition of any goods so seized.

3.    That this Court order that (a) all Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any confusingly similar marks, and all plates, molds, matrices, and other means of making the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order shall be delivered up to WWE, WWE's agents, or WWE's attorneys pending the outcome of this action.

4.    That Defendants be required to account to and reimburse WWE for any and all profits which Defendants have derived from the sale of any Counterfeit Merchandise or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any confusingly similar marks, and for any and all damages which WWE has sustained by reason of the acts complained of herein, or statutory damages.

5.    That Defendants be required to pay treble the amount of any profits derived from the sale of any Counterfeit Merchandise.

6.     That this Court award WWE its cost and reasonable attorneys' fees in this action.

7.     That this Court grant such other and further relief as it deems just and appropriate

under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff World Wrestling Entertainment, Inc. hereby demands a trial by jury of all issues

so triable.

Dated: March 26, 2014                    Respectfully submitted,


Raymond G. Areaux (#16792) (T.A.)
Emily Lippold Gordy (#33858)
*Carver, Darden, Koretzky, Tessier,*
*Finn, Blossman & Areaux, LLC*
Energy Centre, Suite 3100
1100 Poydras Street
New Orleans, LA 70163
Office Phone: (504) 585-3803
Cellular Phone: (504) 343-3803
Facsimile: (504) 585-3801
Email: Areaux@carverdarden.com

**Curtis B. Krasik** (*pro hac vice* **motion to be filed**)
**Jerry S. McDevitt** (*pro hac vice* **motion to be filed**)
**Christopher M. Verdini** (*pro hac vice* **motion to be filed**)
*K&L Gates LLP*
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
*Attorneys for Plaintiff*

## VERIFICATION

I am Vice President, Intellectual Property, Business and Legal Affairs of Plaintiff World Wrestling Entertainment, Inc.  The allegations in the foregoing Complaint that relate or refer to World Wrestling Entertainment, Inc. are true to my own knowledge and as to those allegations that relate or refer to Defendants' activities and that are alleged upon information and belief, I believe them to be true.  I verify under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of March, 2014 in Stamford, Connecticut.


Lauren A. Dienes-Middlen
Vice President, Intellectual Property
Business and Legal Affairs
World Wrestling Entertainment, Inc.