## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

### Filed Under Seal

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VARIOUS JOHN AND JANE DOES, and VARIOUS XYZ CORPORATIONS, <br><br> Defendants. | Civil Action No.: **14-688** <br> **SECT. C MAG. 2** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER FOR SEIZURE OF COUNTERFEIT MARKED GOODS; AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

## INTRODUCTION

Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in support of its Ex Parte Motion for Temporary Restraining Order, Order for Seizure of Counterfeit Marked Goods and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion"), filed concurrently herewith.  WWE also has filed concurrently herewith a Verified Complaint seeking relief pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) as a result of Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's federally registered and unregistered trademarks and service marks.  WWE seeks this relief because it is the only way to stop transient counterfeiters and bootleggers from plaguing WWE's Wrestlemania® XXX weekend events occurring in New Orleans, Louisiana from April 3 to April 7, 2014, as well as the remainder of its 2014-2015 Live Events.

As renowned trademark authority Thomas McCarthy has noted:

> In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective.  The retailer of counterfeit goods is often a vendor peddling memorabilia merchandise at a rock concert, a transient street vendor or a merchant at a flea market.  The counterfeiter or its distributor who is served with a civil summons to appear at a hearing on a preliminary injunction will either disappear or quickly dispense of existing inventory of counterfeit items [leaving the trademark owner without an effective remedy].

5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:34 (4th ed. 2008).  For this reason, Congress passed the Trademark Counterfeiting Act of 1984, incorporated as Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d), which expressly authorizes the seizure of counterfeit goods without prior notice.

WWE now asks this Court to enforce the remedy provided by Congress in 15 U.S.C. §

1116(d). Defendants John and Jane Does and XYZ Corporations are street merchants who are

profiting wrongfully from the sale of merchandise bearing counterfeits of trademarks and service

marks owned exclusively by WWE. WWE therefore brings this action to stop the sale of such

counterfeit merchandise, which, in addition to damaging WWE's valuable good will, also

presents a potential safety hazard to the public. For these reasons and the reasons set forth

below, WWE is entitled the requested Ex Parte TRO, Order for seizure of goods bearing

counterfeit marks, and Order to Show Cause why a preliminary injunction should not issue.

### FACTUAL BACKGROUND

Since at least as early as February 1983, WWE, first doing business as the "World

Wrestling Federation" and now doing business as "World Wrestling Entertainment," has

provided to the public live and televised wrestling and entertainment events and services (the

"WWE Wrestling Services") under the service mark WORLD WRESTLING

ENTERTAINMENT®. See Verified Complaint at ¶ 10. In connection therewith, WWE has

used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs,

merchandise and other products ("WWE Merchandise") under the WORLD WRESTLING

ENTERTAINMENT® mark and certain other service marks and trademarks identified in

Exhibits 1 and 2 to the Verified Complaint (collectively, the "WWE Marks"). Id. Among the

marks most important to this action are:

| Mark | U.S. Trademark Registration Nos. |
|---|---|
| WORLD WRESTLING ENTERTAINMENT | 2,772,677; 2,757,600; 2,757,599; 2,754,499 |
| WWE and WWE logos | 2,772,683; 3,056,074; 2,799,228; 2,751,437; 2,751,436; 2,765,751; 2,757,597; 2,754,495; 2,757,596 |
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339 |

The WWE Marks are well known to the public and have come to identify WWE to the public as

the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise. <u>See</u> Verified Complaint at ¶ 10.

WWE live events include all of the following types of programs: (1) live, pay-per-view events; (2) live, nationally televised shows; and (3) live, non-televised events known as "house shows." <u>Id.</u> at ¶ 11. WWE presents regular World Wrestling Entertainment programs featuring live wrestling events on a pay-per-view basis twelve (12) times a year. <u>Id.</u> at ¶ 12. WWE's annual marquee pay-per-view event is called "Wrestlemania®," which is being held this year in New Orleans, Louisiana. <u>Id.</u> at ¶¶ 3, 11-13. Beginning on April 3, 2014 and ending March 23, 2015 (WWE's final live event before Wrestlemania® XXXI), WWE will embark on a multi-city presentation of live wrestling entertainment events throughout the United States and in many other cities throughout the world ("WWE's 2014-2015 Live Events"), including its Wrestlemania® XXX weekend from April 3 to April 7, 2014 in New Orleans, Louisiana. <u>See id.</u> WWE's Wrestlemania® XXX weekend will consist of various events taking place in the New Orleans area, including, but not limited to, (1) WWE's Wrestlemania® Axxess event at the New Orleans Convention Center from April 3-6; (2) WWE's Hall of Fame event at the Smoothie King Center on April 5; (3) WWE's Wrestlemania® XXX event at the Mercedes-Benz Superdome on April 6; and (4) WWE's Monday Night Raw event at the Smoothie King Center on April 7 (collectively, the "Wrestlemania® XXIX Weekend Events"). <u>Id.</u> at ¶ 3. WWE's live events are extremely popular with the public and, based on past experience, WWE's 2014-2015 Live Events will draw thousands of fans per event from all over the United States. <u>See id.</u> at ¶¶ 11-16.

At and in connection with its live events, as well as in retail stores nationwide and via mail order and on-line catalogs, WWE sells a large variety of the WWE Merchandise featuring the WWE Marks. <u>Id.</u> at ¶ 18. The WWE Merchandise typically displays prominently the name

and logo of the company, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs. Id. Examples of WWE Merchandise include, without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, sunglasses, key rings, action figures, posters, and DVDs. See Verified Complaint, Exhibit 3. As in the past, WWE will sell a large variety of merchandise at and in connection with the Wrestlemania® XXX Weekend Events, and the other WWE 2014-2015 Live Events across the country. See Declaration of Richard S. Hering ("Hering Dec.") at ¶¶ 23-24; Declaration of Lauren Dienes-Middlen, Esq., ("Dienes-Middlen Dec.) at ¶ 3. The merchandise sold at WWE's 2014-2015 Live Events will feature the WWE Marks and likely generate in excess of $19 million dollars in net revenues. Hering Dec. at ¶ 24.

Defendants are bootleggers currently engaged in the manufacture, distribution and sale of unauthorized merchandise including, but not limited to, T-shirts marked with imitations or counterfeits of the WWE Marks ("Counterfeit Merchandise"). See Verified Complaint at ¶¶ 1-3, 5. These bootleggers will attempt to sell the Counterfeit Merchandise at or near the Wrestlemania® XXX Weekend Events and WWE's other 2014-2015 Live Events. See Hering Dec. at ¶¶ 22-27; Dienes-Middlen Dec. at ¶¶ 4-17. WWE has encountered sellers of Counterfeit Merchandise at prior WWE events, including particularly at prior Wrestlemania® events. See Hering Dec. at ¶¶ 10-13, 15-21; Dienes-Middlen Dec. at ¶¶ 18-19. WWE has successfully obtained ex parte TROs and Seizure Orders between 2000-2013 from the District Courts of the Southern District of New York, District of Massachusetts, Eastern District of New York, Middle District of Florida, Southern District of Texas, Northern District of Georgia, Southern District of Florida and District of New Jersey. See Exhibit A attached hereto; Hering Dec. at ¶¶ 10-21. Pursuant to these TROs and Seizure Orders, WWE has been able to seize Counterfeit

Merchandise sold by unauthorized bootleggers at prior Wrestlemania® events and other WWE

live events. See Hering Dec. at ¶¶ 10-21.

WWE has never authorized the manufacture, distribution, or sale of the Counterfeit

Merchandise sold by Defendants. See Verified Complaint at ¶ 26. Unlike genuine WWE goods,

which are of the highest quality and grade, the Counterfeit Merchandise is likely to be of inferior

quality to the WWE Merchandise. Hering Dec. at ¶¶ 29, 40; Dienes-Middlen Dec. at ¶ 11.

Consumers are likely to assume that WWE has manufactured, authorized, or approved the

Counterfeit Merchandise sold by Defendants at or around WWE's live events. See Verified

Complaint at ¶ 46. Further, because the quality of materials used by the Counterfeiters is not and

cannot be controlled by WWE, there is a potential safety risk to the public with regard to the

materials used to manufacture the Counterfeit Merchandise (e.g., the Counterfeit Merchandise

does not meet flammability standards). Hering Dec. at ¶ 40. Thus, Defendants' use of

counterfeits of the WWE Marks on merchandise and souvenirs will deceive the consuming

public into believing that they are purchasing genuine goods, which have been manufactured,

authorized, or approved by WWE. See Verified Complaint at ¶ 46. Additionally, Defendants'

sales of inferior quality Counterfeit Merchandise displaying the WWE Marks will injure WWE's

reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and

memorabilia and could pose a risk to public safety. See id. at ¶ 47.

Based on its prior encounters with sellers of Counterfeit Merchandise at WWE live

events, WWE has reasonable concern that any notice to Defendants would result in the

movement of or dispersal of the goods bearing counterfeit marks to third parties for eventual sale

elsewhere. Hering Dec. at ¶ 43. In this regard, WWE asks this Court for relief in the form of an

ex parte TRO against Defendants, an Order of Seizure of Defendants' goods bearing counterfeits

of the WWE Marks, and an Order to Show Cause why a preliminary injunction should not issue. The relief requested herein is the only method for WWE to protect its rights and the public from the sale of inferior merchandise which bears a false designation of origin and which is sold by Defendants who are accountable to no one, whether for payment of royalties, sales taxes, or for quality control.

## ARGUMENT

This Court may issue a temporary restraining order to preserve the status quo pending a preliminary injunction hearing if WWE establishes that it is likely to suffer irreparable harm in the absence of such an order. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20-22 (2008); Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 829 (5th Cir. 1976); America's Favorite Chicken Co. v. Tae Hwan Kim, No. 9-3452, 1993 WL 441854 at *1-2 (E.D. La. October 25, 1993). Under prevailing Fifth Circuit law, the standards for issuance of a temporary restraining order are the same as those governing the granting of preliminary injunctive relief. See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 309 (5th Cir. 2008); Pizza Hut v. White, No. 3:02-CV-0790-L, 2002 U.S. Dist. LEXIS 19930 at *5 (N.D. Tex. 2002) (citing Canal Auth. of the State of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974) (en banc)); Khan v. Fort Bend Indep. Sch. Dist., 561 F.Supp. 2d 760, 763 (S.D. Tex. 2008).

In order to obtain a temporary restraining order or preliminary injunction in a trademark infringement action, a plaintiff must show (1) that it has a substantial likelihood of prevailing on the merits of its trademark infringement claim, (2) that there exists a substantial threat that it will suffer irreparable injury if the injunction is denied, (3) that the harm it is likely to suffer outweighs any harm to defendants if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. Paulsson, 529 F.3d at 309; Sierra Club v. City of

6

San Antonio, 112 F.3d 789, 793 (5th Cir. 1997), cert. denied, 522 U.S. 1089 (1998).  WWE will

demonstrate below, and before the Court, that it is entitled to relief under each of these four

factors.

Moreover, because notice to Defendants itself would be likely to trigger irreparable

injury, an ex parte TRO is appropriate here.  See 15 U.S.C. § 1116(d); In re Vuitton et Fils S.A.,

606 F.2d 1, 5 (2d Cir. 1979) (issuing an ex parte temporary restraining order after finding that if

notice were given to the alleged infringer, it was highly probable that the infringer would dispose

of the infringing goods in the few hours before the hearing).  Accordingly, WWE is entitled to

injunctive relief in the form of the proposed TRO.

## A.      DEFENDANTS SHOULD BE RESTRAINED FROM VIOLATING WWE'S TRADEMARK RIGHTS.

### 1.      There Is A Substantial Likelihood That WWE Will Prevail On The Merits Of Its Claims.

In a trademark infringement action brought under the Lanham Act, the plaintiff must

show that (1) its mark is valid, and (2) the defendant's use of the mark is likely to cause

consumer confusion.  See Paulsson, 529 F.3d at 309.[1]  WWE is likely to succeed on the merits of

its claims against Defendants for the following three reasons.

*First*, the WWE Marks are valid.  WWE owns federal trademark and service mark

applications and registrations for the numerous marks listed in Exhibit 1 to the Verified

Complaint.  The federal trademark registrations are prima facie evidence of the validity of

WWE's marks.  15 U.S.C. § 1115(a).  With respect to the unregistered names and trademarks of

its current wrestlers, including their likenesses and rights of publicity, WWE exclusively owns or

controls all right, title and interest in those trademarks and other intellectual property right

---

[1]  The Lanham Act protects both registered (§ 32) and unregistered marks (§ 43).  See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003).

through its contracts with those wrestlers.  See Verified Complaint at ¶ 10.

*Second*, Defendants' use of counterfeit marks is likely to cause consumer confusion.  The likelihood of confusion test focuses on whether a defendant's use of a plaintiff's trademark is likely to create confusion in the minds of potential purchasers as to the source, affiliation, or sponsorship of the parties' products.  See Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998) (citing Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 227 (5th Cir. 1995), cert. denied, 515 U.S. 1103 (1995)); see also McCARTHY ON TRADEMARKS § 27:18.[2]  Indeed, WWE has successfully obtained ex parte TROs and Seizure Orders between 2000-2013 from the District Courts of the Southern District of New York, District of Massachusetts, Eastern District of New York, Middle District of Florida, Southern District of Texas, Northern District of Georgia, Southern District of Florida and District of New Jersey.  See Exhibit A; Hering Dec. at ¶¶ 10-21.

In the instant case, Defendants have manufactured bootleg merchandise for the purpose of selling it at WWE shows and are intentionally (1) using marks that are **identical** to the WWE Marks; (2) using them on the same types of merchandise that genuine WWE Marks are affixed to, such as T-shirts; and (3) targeting the fans of the WWE by selling the Counterfeit Merchandise at or near WWE's 2014-2015 Live Events.  See Verified Complaint at ¶¶ 19-45.

---

[2] The Fifth Circuit employs a non-exhaustive list of factors for determining likelihood of confusion, known as the "digits of confusion": (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent and (7) any evidence of actual confusion.  See Elvis Presley, 141 F.3d at 194. Because Defendants are expected to use identical marks on the exact same products, WWE has not discussed these factors in detail.  In any event, however, the Verified Complaint and declarations submitted in support thereof establish that the WWE Marks are distinct, that actual confusion has already occurred, and that Defendants intend to and, unless abated, will deliberately confuse the consuming public into believing they are purchasing legitimate WWE Merchandise of the highest quality.  Accordingly, likelihood of confusion is clear.

Thus, the likelihood of confusion in the instant case is extreme. See Paulsson, 529 F.3d at 310

(affirming district court's conclusion that it "need not engage in an analysis of each of the 'digits

of confusion' . . . where, as here Defendants employed [plaintiff's] exact marks"); Microsoft

Corp. v. Software Wholesale Club, Inc., 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000) ("in

the case of a counterfeit mark, likelihood of confusion is clear.").

      It is undeniable that confusion will be caused by Defendants' sale of merchandise bearing

the WWE Marks during the Wrestlemania® XXX Weekend Events from April 3 to April 7, 2014

in New Orleans, Louisiana. Fans at the Wrestlemania® XXX Weekend Events and the other

WWE 2014-2015 Live Events have every reason to believe that merchandise which is sold in or

around the venues where live events are taking place, and which is marked with imitations or

counterfeits of the WWE Marks, is genuine WWE merchandise. Moreover, it is clear that the

sale of unauthorized bootlegged merchandise bearing the names, trademarks, logos, or likenesses

of well-known events, performers or groups constitutes a violation of the Lanham Act. See

Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir. 1989) (holding that plaintiff was

entitled to summary judgment against vendors who made reference to Boston Marathon on

clothing); John Daly Enters., LLC v. Hippo Golf Co., 646 F. Supp. 2d 1347, 1350 (S.D. Fla.

2009) (finding that sale of merchandise bearing professional golfer's trademark constituted

infringement); SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841, 845-47 (E.D. Ky. 2002) (holding

that selling T-shirts and other merchandise using a performer's likeness, image, photograph,

logos and/or tour information without authorization constitutes infringement).[3]

---

[3] See also NBA Props., Inc. v. Dahlonega Mint, Inc., 41 F.Supp.2d 1341 (N.D. Ga. 1998); Nice
Man Merch., Inc. v. Logocroft Ltd., C.A. No. 91-7475, 1992 WL 59133, at *4 (E.D. Pa. March
18, 1992); Brockum Co. v. Blaylock, 729 F. Supp. 438, 444 (E.D. Pa. 1990); Winterland
Concessions Co. v. Sileo, 528 F. Supp. 1201, 1214 (N.D. Ill. 1981); Billy Joel v. Various John
Does, 499 F. Supp. 791, 792 (E.D. Wis. 1980).

*Finally*, Defendants' uses of the WWE Marks on goods sold in connection with the Wrestlemania® XXX Weekend Events and WWE 2014-2015 Live Events provide clear evidence that Defendants seek to trade on WWE's well-known marks and confuse the public into believing that Defendants' Counterfeit Merchandise is genuine WWE merchandise. As explained by the District Court for the Eastern District of Pennsylvania in Brockum Co. v. Blaylock, 729 F. Supp. 438, 444 (E.D. Pa. 1990):

> Defendant [bootlegger] cannot obtain a "free ride" at the [exclusive licensee's] expense. Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the good will associated with the Rolling Stones, their 1989 tour, and the promotion of the even created or undertaken by the plaintiff and the Rolling Stones. Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown.

### 2. WWE Will Suffer Irreparable Injury.

A showing of likelihood of confusion as to source or sponsorship ordinarily will establish that a risk of irreparable harm exists. See Brennan's Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 129 (2d Cir. 2004); Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 902 (7th Cir. 2001); GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209 (9th Cir. 2000); Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1056 (6th Cir. 1999); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998); Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998); Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.3d 633, 640 (1st Cir. 1992); Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 n.7 (8th Cir. 1980). Although the Fifth Circuit has not formally adopted a "presumption of irreparable injury" upon a showing of likelihood of confusion, see Paulsson, 529 F.3d at 312, district courts within the circuit have applied such a presumption. See, e.g., Mary Kay, Inc. v. Weber, 661 F.

Supp. 2d 632, 640 (N.D. Tex. 2009); Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C., 83 F.Supp.2d 810, 831 (S.D.Tex.1999).[4]

Nevertheless, no presumption is necessary to decide this case because WWE can make a sufficient independent showing of irreparable harm from loss of control of its marks and damage to its reputation. Paulsson, 529 F.3d at 313 (without using presumption, finding applicant made sufficient showing of irreparable injury from loss of control); Petro Franchise Sys., LLC v. All Am. Properties, Inc., 607 F. Supp. 2d 781, 794 (W.D. Tex. 2009) (same). It is well settled that an organization's loss of control over its reputation or goodwill constitutes an "irreparable injury." Paulsson, 529 F.3d at 313 (affirming district court's finding of irreparable injury where plaintiff "had lost control of the quality of the technology that was being associated with its mark" and the damage to plaintiff's goodwill could not be quantified); Quantum Fitness Corp., 83 F. Supp. 2d at 831 (holding that plaintiff in a trademark infringement action established irreparable injury where plaintiff lacked control over how its mark was being used by defendant); Blue Bell Creameries v. Denali, No. H-08-0981, 2008 WL 2965655 at *6-7 (S.D. Tex. July 31, 2008) (finding irreparable injury where plaintiff had no control over defendant's use of an infringing mark). In this case, WWE certainly will lose control over its reputation and goodwill if Defendants are not prohibited from selling goods bearing counterfeit WWE Marks. WWE has

---

[4] The Fifth Circuit has declined on at least two occasions to squarely address how the United States Supreme Court's ruling in eBay v. MarcExchange, LLC, 547 U.S. 388 (2006), in which the Court held that a permanent injunction should not automatically issue on a showing of patent infringement, affects this presumption. Southern Co. v. Dauben Inc., 324 F. App'x 309, 318 (5th Cir. 2009); Paulsson, 529 F.3d at 313. In a recent case, however, the Fifth Circuit approvingly quoted 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:2 (4th ed. 2001) for the proposition that "all that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion - injury is presumed." Abraham v. Alpha Chi Omega, 708 F.3d 614, 627 (5th Cir. 2013), cert. denied, 134 S. Ct. 88 (2013). Thus, the legal principle that likelihood of confusion generally establishes the risk of irreparable harm remains viable in the Fifth Circuit.

no connection or access to Defendants' goods, and thus cannot monitor the quality, appearance, safety, or other aspects of the goods which tend to impact WWE's reputation.

The fact that Defendants' Counterfeit Merchandise is expected to be inferior in quality to genuine WWE merchandise contributes to the irreparable injury in this case. See Osgood Heating & Air Conditioning, Inc. v. Osgood, No. A. 04-CA-1037, 2004 WL 3436800, at *4 (W.D. Tex. Dec. 21, 2004) (finding irreparable injury where plaintiff had no way to determine the harm to the goodwill in its mark as a result of defendant "providing low quality work under the auspices" of plaintiff's mark); Camel Hair & Cashmere Inst. v. Assoc. Dry Goods Corp., 799 F.2d 6, 15 (1st Cir. 1986) ("if an infringer's product is of poor quality, or simply not worth the price, a lasting but not readily measurable injury may be inflicted on the plaintiff's reputation . . . ." (quoting Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971)). Even if the goods were not inferior, the Lanham Act seeks to protect trademark owners from the unauthorized use of their marks and to protect the public from purchasing goods bearing counterfeit marks and, therefore, irreparable injury occurs from of the loss over the control of one's mark. See Joy Mfg. Co. v. CGM Valve & Gage Co., Inc., 730 F. Supp. 1387, 1394 (S.D. Tex. 1989) ("[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, **regardless of the actual quality of the defendant's goods**.") (emphasis added); Blue Bell, 2008 WL 2965655 at *7 ("irreparable injury stems from [trademark owner's] lack of control, not from the actual quality of [infringer's] products.").

### 3.    The Threatened Injury To WWE Outweighs Any Potential Harm To Defendants.

As succinctly stated by the District Court for the Eastern District of Kentucky, "bootleg vendors have no conceivable right to continue violating the [Lanham Act]." SKS Merch., 233 F.

Supp. 2d at 848. There is no legitimate argument that Defendants would be harmed by an order

that prevents them from violating the Lanham Act. Any conceivable harm to Defendants would

be purely economic, and under the proposed order, WWE will post security for payment of any

costs or damages that may be incurred or suffered by a party found to be wrongfully restrained.

As such, the irreparable harm to WWE discussed above is sufficient to outweigh any harm that

Defendants could incur.

**4.     Injunctive Relief Will Serve The Public Interest.**

Defendants are infringing the WWE Marks, and an Order restraining Defendants from

such activity will clearly serve the public interest for at least the following five reasons.

*First*, "[t]he public interest is **always served** by requiring compliance with Congressional

statutes such as the Lanham Act and by enjoining the use of infringing marks." Quantum Fitness

Corp., 83 F. Supp. 2d at 832 (emphasis added).

*Second*, the public interest is served by preventing consumer confusion about the correct

source of goods and services. See Blue Bell, 2008 WL 2965655 at *7 (finding the public interest

factor weighs in favor of granting an injunction because enforcing the trademark laws

"prevent[s] consumer 'confusion about the origin of the products that it buys.'") (citations

omitted); Chemlawn Servs. Co. v. CL Licensing Co., 690 F. Supp. 1560, 1572 (S.D. Tex. 1988)

(finding that "the public interest is served by enjoining unfair trade practices which occur within

the stream of commerce subject to the lawful regulation of Congress and in violation of the

Lanham Act").

*Third*, the public interest is served by protecting businesses from those who exploit well-

established commercial marks, such as the WWE Marks. See Tootsie Roll Indus., Inc. v.

Sathers, Inc., 666 F. Supp. 655, 661 (D. Del. 1987) ("[T]he public has an interest in protecting

business good will. . . . [It] allows consumers to garner a degree of knowledge about products in

the market and fosters a sense that they 'know what they are getting' when they buy a given product.").

     ***Fourth***, the sale of licensed merchandise is expected to generate a substantial amount of revenue for not only WWE, but also the local venues, which will receive a percentage of WWE's legitimate sales, and the federal, state, and local governments who collect taxes upon the total amount of sales of legitimate merchandise. For example, a study conducted by the Enigma Research Corporation estimated that Wrestlemania® XXIX generated $101.2 million in economic impact for the New Jersey/New York area and approximately $16.5 million in local, state and county taxes. See Exhibit C attached hereto. Without a TRO and Seizure Order, counterfeiters will be allowed to steal revenue not only from WWE, but also from local merchants and the governments of the United States and Louisiana.

     ***Finally***, the public interest is served by preventing goods that may be of inferior quality and could potentially pose a serious safety risk from being made available to the general public, and especially to children to whom most of the counterfeit T-shirts are targeted (e.g., the Counterfeit Merchandise does not meet flammability standards).

**B.**    **WWE IS ENTITLED TO A TRO AND SEIZURE ORDER AGAINST SALES OF GOODS BEARING COUNTERFEIT MARKS.**

     Federal courts have authority to grant a TRO without notice to the adverse party if irreparable injury will result to the plaintiff before the adverse party can be heard. See Fed. R. Civ. P. 65(b). The Court may also grant an ex parte TRO and Seizure Order under 15 U.S.C. § 1116(d) upon a showing of irreparable injury. As shown above, WWE has demonstrated irreparable injury which cannot be adequately compensated by an award of money damages.

     Once the required showing is made under 15 U.S.C. § 1116(d) and the plaintiff complies with the requirements of the Act, the Seizure Order must issue. Indeed, it is an abuse of

discretion for a district court not to issue a Seizure Order when an applicant has complied with the statute and met appropriate standards of proof. See Vuitton v. White, 945 F.2d 569, 576 (3d Cir. 1991).[5] The reason ex parte relief must issue is that, in a counterfeiting case, notice to a defendant could result in no relief for the plaintiff because counterfeiters often destroy or hide the counterfeit merchandise. See In re Vuitton, 606 F.2d at 4 (reversing district court's refusal to issue ex parte order); see also Pepe (U.K.) LTD. v. Ocean View Factory Outlet Corp., 770 F. Supp. 754, 759 (D.P.R. 1991) (in counterfeit cases, ex parte relief is necessary because it is "common for counterfeiters to transfer their inventory to another counterfeit seller whose identity is unknown to the trademark owner" or destroy such inventory).

"The weight of authority around the country appears to favor the granting of ex parte Seizure Orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." Fimab-Finanziaria Maglificio Biellese Fratelli FILA S.p.A. v. Kitchen, 548 F. Supp. 248, 249 (S.D. Fla. 1982) (citing Rock Tours, Ltd. v. Various John Does, 80-742-MA (D. Mass. 1980)).[6] The instant case is one in a

---

[5] WWE has complied with the numerous requirements under the statute, including: (1) providing notice to the U.S. Attorney's office in advance of the application for seizure order; (2) filing a declaration and a Verified Complaint establishing facts sufficient to support the findings of fact and conclusions of law; and (3) agreeing to post security adequate to compensate any person from whom goods are wrongfully seized. WWE's Proposed Order also includes a provision to seal the record in accordance with 15 U.S.C. § 1116(d)(8).

[6] Because of the ex parte nature of WWE's requested relief, WWE points the Court to two non-binding district court decisions in which ex parte relief against unnamed bootleggers was denied. See Plant v. Does, 19 F. Supp. 2d 1316, 1319 (S.D. Fla. 1998) (holding that the court did not have jurisdiction over unnamed defendants where plaintiff did not provide any reason for why it could not obtain the identities of the unnamed defendants); Rock Tours, Ltd. v. Does, 507 F. Supp. 63, 66 (N.D. Ala. 1981) (citing at least sixteen other federal district court cases that granted ex parte relief against unnamed bootlegging defendants but holding that the court did not have personal jurisdiction over unnamed defendants). It is notable that in denying ex parte relief in those cases, neither court referred to the ex parte relief provided for by 15 U.S.C. § 1116(d). Moreover, the rationale of the courts in Plant and Rock Tours to deny ex parte relief is not applicable here for the reasons clearly articulated in SKS Merch. See SKS Merch., 233 F. Supp.

list of cases where counterfeiters set up shop near a sporting or entertainment event to sell unauthorized, counterfeit marked T-shirts and similar memorabilia. See SKS Merch., 233 F. Supp. 2d at 845-47; see also Exhibits A-B attached hereto. As set forth in the Hering and Dienes-Middlen Declarations, these counterfeiters will appear at each venue and will rarely have identification or keep records of their sales.

In the instant case, Defendants seek to reap what they have not sown, namely the fruits of the goodwill and fame associated with the WWE Marks. This Court should therefore grant the TRO, Seizure Order and Order to Show Cause to prevent Defendants from taking a "free ride" at WWE's expense.

**C.      WWE IS ENTITLED TO A TRO AND SEIZURE ORDER AGAINST DEFENDANTS WHOSE IDENTITIES ARE PRESENTLY UNKNOWN.**

It is well-established that a plaintiff need not await the consummation of threatened harm to obtain relief. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1971). In recognition of this longstanding rule of law, courts permit a plaintiff to use fictitious names in a complaint. See, e.g., Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

While naming "John Doe" defendants is not the typical means to begin a litigation, courts addressing the factual situation of bootleggers have issued TROs and Seizure Orders against unnamed defendants because a plaintiff otherwise would have no practical recourse for such a clear violation of its rights. See, e.g., SKS Merch., 233 F. Supp. 2d at 849 (noting that enjoining unnamed bootlegger defendants is proper where "[t]he Defendants themselves – not the Plaintiffs – have made identification impossible . . . ."); Brockum Int'l, Inc. v. Various John Does, 551 F.

---

2d at 848-51 (rejecting the court's analysis in Plant and granting ex parte TRO and seizure order).

Supp. 1054, 1055 (E.D. Wis. 1982); <u>Billy Joel</u>, 499 F. Supp. at 792 (noting that "problem of the defendants' identities is met . . . by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom [counterfeit] merchandise is seized . . . ."; <u>Moon Records v. Does</u>, 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the defendants will be met by requiring copies of the complaint and the [order] to be served upon all persons from whom infringing merchandise is sold").

    Fictitious names for Defendants are appropriate in this case. The practice has been allowed across many jurisdictions to stop counterfeiting at live performances and events. Indeed, WWE has successfully obtained <u>ex parte</u> TROs and Seizure Orders between 2000-2013 from the District Courts of the Southern District of New York, District of Massachusetts, Eastern District of New York, Middle District of Florida, Southern District of Texas, Northern District of Georgia, Southern District of Florida and District of New Jersey.  <u>See</u> Exhibit A; Hering Dec. at ¶¶ 10-21.  In addition, WWE has provided the Court with <u>ex parte</u> TROs and nationwide preliminary injunctions and Seizure Orders entered in 15 different jurisdictions throughout the United States since 2000.  <u>See</u> Exhibit B.

    WWE brings this action to stop Defendants' illegal activities that undoubtedly will take place at WWE's Wrestlemania® XXX Weekend Events in New Orleans, Louisiana from April 3 to April 7, 2014, as well as the remainder of its 2014-2015 Live Events.  These Defendants, however, often operate anonymously, without any identification, licenses or addresses and if confronted either refuse to give any contact information or provide false information.  In addition, it is clear from the nature of Defendants' activities and WWE's prior experiences that Defendants will be present in this jurisdiction.  Consistent with Rule 4 of the Federal Rules of Civil Procedure, WWE will make every reasonable effort to further identify Defendants for

purposes of amending the pleadings to add named Defendants.

Because of Defendants' modus operandi, WWE has no choice other than to proceed

against "John Doe" and "XYZ Corporation" defendants, and this Court has the authority to

proceed against these serial infringers who have not yet been positively "identified."

**D.      WWE IS ENTITLED TO A NATIONWIDE INJUNCTION AND SEIZURE
         ORDER ENJOINING DEFENDANTS' ACTIONS.**

> **1.      A Nationwide Injunction Is Appropriate Where Defendants Engaged In The
>           Counterfeiting Activity Over The Course Of A Nationwide Series of Live
>           Events.**

In addition to the <u>ex parte</u> TRO and Seizure Order, WWE is seeking a preliminary

injunction.  In the live sports and entertainment context, particularly where companies like WWE

tour and participate in a series of live events throughout the country, counterfeiters, like

Defendants here, follow such events selling Counterfeit Merchandise at every city and venue

where a Live Event takes place.  <u>See</u> Hering Dec. at ¶¶ 25-38.  Recognizing this modus operandi,

courts across the country have granted nationwide injunctive relief and seizure orders.  <u>See, e.g.</u>,

<u>SKS Merch.</u>, 233 F. Supp. 2d at 849-53; <u>Gore v. Various John Does</u>, No. 98-CIV-7576 (DLC),

1998 WL 778374, at *1-2 (S.D.N.Y. Nov. 6, 1998); Exhibits A-B.

In granting nationwide, multi-district relief, courts acknowledge that such relief is the

only effective way to stop counterfeiting activity that is undertaken by traveling counterfeiters

and bootleggers who conspire to travel along tour routes and criss-cross the United States.  <u>See</u>

<u>SKS Merch.</u>, 233 F. Supp. 2d at 849-53.  Nationwide relief is specifically authorized by 15

U.S.C. § 1116, which provides in pertinent part for enforcement and service of an injunction

"anywhere in the United States where [Defendants] may be found."  15 U.S.C. § 1116(a).

Furthermore, Rule 65(d) of the Federal Rules of Civil Procedure specifically provides that an

injunction is binding "upon the parties to the action . . . and upon those persons in active concert

or participation with them who receive actual notice of the order by personal service or otherwise." One district court recently considered the propriety of nationwide injunctions to stop counterfeit merchandise from being sold during a nationwide musical tour and held that such relief is appropriate. See SKS Merch., 233 F. Supp. 2d at 841. As set forth below, the reasoning of the court in SKS Merch. applies here and the court should grant WWE's request for a multi-district injunction and seizure order.

*First*, WWE has, on many occasions, attempted to identify the Defendants in this action but has been thwarted by Defendants through numerous evasive tactics, including, but not limited to, failing to carry identification, fleeing when approached by WWE officials and giving false information. See Hering Dec., ¶¶ 12, 15-28; see also generally Dienes-Middlen Dec. Moreover, as set forth more fully in WWE's Verified Complaint, based on WWE's prior experiences, these unnamed Defendants and their Counterfeit Merchandise will appear not only at the Wrestlemania® XXX Weekend Events in New Orleans, Louisiana from April 3 to April 7, 2014, but also at WWE's other 2014-2015 Live Events set forth in Exhibit 4 to the Verified Complaint. For example, in the case WWE filed in the Southern District of Florida for Wrestlemania® XXVIII, two of the named Defendants, Thomas Keane (New York resident) and "Butch" Thomas Ingram, also were served at Wrestlemania® XXIV in Orlando, Florida in April 2008, pursuant to an ex parte TRO and seizure order from the District Court for the Middle District of Florida (Case No. 6:08-cv-00418-JA-GJK). Hering Dec. at ¶ 26. Neither individual appeared in court in Orlando or Miami. Id. at ¶¶ 26, 39. Additionally, Defendants are even expected to print Counterfeit Merchandise with multiple dates from the 2014-2015 Live Events schedule so that the Counterfeit Merchandise can be sold from city-to-city. See Hering Dec. at ¶¶ 25-35; see also generally Dienes-Middlen Dec. Indeed, WWE has seen the same counterfeit

merchandise in, for example, California and Florida and already has seen identical counterfeit merchandise entitled "Road to Wrestlemania" in Baltimore, Maryland and St. Louis, Missouri. See Dienes-Middlen Dec. at ¶ 18, Exhibit 6.  WWE should not be required to suffer irreparable harm in every city before obtaining relief from what is clearly concerted infringing activity by the unnamed Defendants.

*Second*, as the court in SKS Merch. specifically held, 15 U.S.C. § 1116 explicitly provides federal courts the power to grant nationwide injunctions against violation of the Lanham Act.  See SKS Merch., LLC, 233 F. Supp. 2d at 849-850.  The court's analysis in SKS Merch. is not only correct but also logical, as injunctive relief that did not apply nationwide would be of little use if a defendant even though enjoined by one court could sell counterfeit goods in another district without consequence.

*Third*, just as in SKS Merch., any injunctive relief granted in this action would apply only to those Defendants who are served and those acting in concert with those served Defendants and any improper seizure, an unlikely result based on WWE's vast prior experiences, would be protected by the injunction bond that WWE will post.

Accordingly, the Court should enjoin Defendants from engaging in the counterfeiting activities described above for the duration of WWE's 2014-2015 Live Events set forth in Exhibit 4 to the Verified Complaint.

## 2.    This Court Has Jurisdiction Over All Defendants.

As the Hering and Dienes-Middlen Declarations establish, it is only a matter of time before the first Defendant is served in this action.  See Hering Dec. at ¶¶ 22-26; Dienes-Middlen Dec. at ¶¶ 18-19.  Service of process under Rule 4 of Federal Rules of Civil Procedure confers jurisdiction in this Court even with respect to John Doe defendants.  See Maclin v. Paulson, 627 F.2d 83, 87-88 (7th Cir. 1980).  Moreover, the requested injunction, issued upon hearing after

notice to Defendants via enforcement of the Seizure Order, "may be served on [Defendants] anywhere in the United States." 15 U.S.C. § 1116(a). Thus, once any Defendant has been served, the multi-district territorial scope of the requested preliminary injunction is properly triggered under the Court's inherent authority.

The Supreme Court of the United States has recognized that Rule 65(d) of the Federal Rules of Civil Procedure was intended to embody "the common-law doctrine that a decree of injunction not only bind the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945). Courts have realized that "the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text." Rockwell Graphic Sys., Inc. v. DEV Indus., 91 F.3d 914, 920 (7th Cir. 1996). Rule 65(d) is meant to protect injunctions from being so undermined. See id. The Court thus may enjoin all participants in a counterfeiting operation in which any Defendants are members.

The counterfeiting activities of Defendants and all of those who remain unidentified are part of a concerted operation that will follow WWE's 2014-2015 Live Events and sell similar merchandise throughout the country. See Hering Dec. at ¶¶ 25-37; see also generally Dienes-Middlen Dec. The Counterfeit Merchandise is mass produced and will be sold nationwide at each 2014-2015 Live Event. Id. Indeed, because WWE's 2014-2015 Live Events are planned out in advance and advertised on WWE's website, many of the Defendants print the dates of WWE's 2014-2015 Live Events on the back of the counterfeit T-shirts which they sell. Id. Any person found selling a shirt that has various dates for WWE's 2014-2015 Live Events can fairly be said to be "aiding and abetting, or acting in active concert with" served Defendants who have sold similar shirts at other 2014-2015 Live Events. Based on its experience, WWE believes that

all seizures will be effected upon counterfeiters throughout the country selling substantially

identical, mass produced T-shirts and other counterfeit merchandise that emanates from only one

or a few centralized sources.  Indeed, as set forth in the attached declarations, WWE has

encountered the same counterfeit merchandise from city-to-city and has recently encountered

identical counterfeit "Road to Wrestlemania" merchandise in Baltimore, Maryland and St. Louis,

Missouri.  See id.  If "homemade" counterfeit items are seized, such seizure would be virtually

identical to seizure under a local order issued in that district.  Such a local order surely would not

afford any greater notice or due process.  Indeed, WWE has observed the same individuals

selling the same Counterfeit Merchandise at various locations throughout the United States.  See

Hering Dec. at ¶¶ 25-37.

The injunction sought by WWE would extend to the Defendants served and all other

unidentified persons acting in concert with them, in any district, who receive notice of the

injunction.  It would also extend to other peddlers of counterfeit merchandise in the vicinity of

WWE's 2014-2015 Live Events who receive actual notice of the injunction.  Enforcement

officials would continue to serve the order, seize the infringing goods, and hold or otherwise

dispose of them in accordance with the Court's instructions.  WWE's posted security would be

continued so that Defendants would always have the right to be heard and are guaranteed a

source of recovery for any wrongdoing that they may assert.  Moreover, requiring WWE to go

from court to court throughout WWE's 2014-2015 Live Events would impose a great burden on

both WWE and the judicial resources of the courts.  Although no bootlegger has ever appeared in

any case where WWE has been granted a nationwide injunction and seizure order, WWE would

waive any objections to venue and transfer the action should any Defendant challenge any

enforcement of the injunction.  Indeed, WWE would welcome such appearances as it would

permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.

WWE has established federally protected rights under the Lanham Act. Defendants' activities unquestionably violate those rights, and WWE is thus entitled to the protection of this Court. Experience has shown that Defendants are part of an illegal counterfeiting chain and that those Defendants served within this district, as well as their cohorts, will remain a major link in that chain as they follow WWE's 2014-2015 Live Events across the United States. Accordingly, WWE's request for a nationwide Preliminary Injunction and Order of Seizure is justified to protect its control over the use of its marks and its reputation for the quality of goods. Moreover, this relief is necessary to prevent Defendants from passing off the Counterfeit Merchandise as genuine WWE Merchandise, thereby causing confusion, deception, and mistake of the public. Granting the Preliminary Injunction requested by WWE against Defendants' infringing and counterfeit marked goods will protect WWE and the public interest.

The court, through its grant of equity power, has the authority to issue such relief as merits the necessities of the particular case. Hecht Co. v. Bowles, 321 U.S. 321 (1944). An equitable remedy is a blend of what is necessary, fair and workable. The court must look to the practical realities and necessities involved in reconciling competing interests. Lemon v. Kurtzman, 411 U.S. 192, 200-01 (1973). The practical reality of the present circumstances is that WWE has no other recourse and no means of preventing its loss without nationwide relief.

## **CONCLUSION**

For the foregoing reasons, WWE respectfully requests that its Application for a Preliminary Injunction and Order of Seizure, with an ex parte Temporary Restraining Order and Order of Seizure be granted.

23

Dated: March 26, 2014            Respectfully submitted,

_____

**Raymond G. Areaux (#16792) (T.A.)**
**Emily Lippold Gordy (#33858)**
*Carver, Darden, Koretzky, Tessier,*
*Finn, Blossman & Areaux, LLC*
Energy Centre, Suite 3100
1100 Poydras Street
New Orleans, LA 70163
Office Phone: (504) 585-3803
Cellular Phone: (504) 343-3803
Facsimile: (504) 585-3801
Email: Areaux@carverdarden.com

**Curtis B. Krasik (*pro hac vice* motion to be filed)**
**Jerry S. McDevitt (*pro hac vice* motion to be filed)**
**Christopher M. Verdini (*pro hac vice* motion to be filed)**
*K&L Gates LLP*
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
*Attorneys for Plaintiff*