UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC. | CIVIL ACTION |
| VERSUS | NO. 14-688 |
| VARIOUS JOHN DOES AND JANE DOES, ET AL | SECTION "C"(2) |

ORDER AND REASONS

This matter comes before the Court on *ex parte* motion for temporary restraining order, order for seizure of counterfeit marked goods, and order to show cause why a preliminary injunction should not issue, its supporting documents, verified complaint along with a motion to seal filed by World Wrestling Entertainment, Inc. ("WWE"). Having considered the record, the memoranda of counsel and the law, the Court rules as follows.

Plaintiff WWE provides live and televised wrestling entertainment to the public, in connection with which it appears that WWE owns many valuable servicemarks and trademarks such as those related to WWE's current wrestlers and events. One such series of events, called Wrestlemania XXX, is currently scheduled for April 3 to April 7, 2014 in New Orleans, Louisiana. WWE expects based on its prior experience that, coincident

1

with this event, a number of bootleggers will sell unauthorized and infringing merchandise, such as t-shirts with infringing or counterfeit marks owned by WWE.

In response to this threat, which the Court has little trouble crediting as real for purposes of this order, WWE has requested an extraordinary form of relief. It has filed a verified complaint against 100 John Doe defendants and asked for a temporary restraining order to issue without notice against those defendants, prohibiting them engaging in infringing acts within five miles of any WWE event, nationwide, over the next year.

Plaintiff avers, and the record would seem to support, that it has been able to obtain relief along these lines in the past, relying on 15 U.S.C. § 1116(d) to support the issuance of an *ex parte* seizure order.[1] "The issuance of a temporary restraining order is," however, "a matter that lies within the discretion of the district court," 11A Fed. Prac. & Proc. Civ. § 2951 (2d ed. West 2013), and a Plaintiff seeking an *ex parte* seizure order

---

[1] Plaintiff also mentions the All Writs Act in its proposed order, but its memorandum does not brief its applicability. And although the All Writs Act does provide the Court with a flexible and expansive power, its use must still comport with the limits on federal courts' power discussed below. The Court's jurisdictional and due process concerns expressed below about Plaintiff's proposed use of 15 U.S.C. § 1116(d) apply with equal, if not greater, force to any exercise of the Court's power under the All Writs Act. Accordingly, the Court declines to exercise its discretion to issue a temporary restraining order under the All Writs Act.

under 15. U.S.C. § 1116(d) must satisfy specific criteria. In particular, the plaintiff bears the burden of persuasion to show "*from specific facts*" that it "is likely to succeed in showing that *the person against whom seizure would be ordered* used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services"; "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the *person against whom seizure would be ordered* of granting the application"; and "*the person against whom seizure would be ordered*, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 16 U.S.C. §(d)(4)(B)(iii), (vi), (vii) (emphases added).

The problem with Plaintiff's request is apparent once one recalls that the order it requests is not directed against a single named, identified, or even described person—all the defendants are John Does, and Plaintiff provides no particular information about the identity of any of them. At best, Plaintiff defines Defendants almost tautologically: Defendants are anyone who would be a proper defendant within broad geographic and temporal limits. Yet without knowing who (not even necessarily a name, but some information about) "the person against whom seizure would be ordered," the Court cannot possibly evaluate the above requirements, and certainly not based on "specific facts." Yet all Plaintiff has provided the Court by way of description is, in essence,

"Some unidentified people we think might sell merchandise we think is counterfeit around WWE events across the nation during the next year."

This failure of description also causes Plaintiff to fail to make the showing required under the traditional requirements for the "extraordinary remedy" of a temporary restraining order. *Billizone v. Louisiana Dept. of Probation and Parole,* 2013 WL 6187476, at *2 (Nov. 25, 2013 E.D. La.) (noting that a plaintiff must show "(1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the movant will suffer irreparable injury if injunctive relief is denied; (3) the threatened injury outweighs the harm the injunction will cause the opponent; and (4) granting injunctive relief will not disserve the public interest."). Without knowing anything about Defendants, the Court cannot, at a minimum, evaluate the first and third requirements.[2] Accordingly, the Court cannot afford relief under 15 U.S.C. § 1116(a) either.

Plaintiff attempts to remedy the fatal defect in its application by a procedure that,

---

[2] Plaintiff has cited to no authority deciding whether the requirements of 15 U.S.C. § 1116(d) supercede the traditional requirements for a temporary restraining order. Given that several of § 1116(d)'s requirements are more particular instantiations of the traditional requirements, there might arise an inference that they do. Section 1116(d) does not, however, refer to the public interest, and its requirements are preceded by the language "[t]he Court shall not grant such an application unless," which is not phrasing that suggests the requirements that follow are exhaustive. Accordingly, the Court concludes that, if it were to find Plaintiff has satisfied the Section 1116(d) requirements, the Court would still have to consider the public interest.

at least outside of this matter, the Court has never before encountered. Its proposed order provides that:

> Any federal, state, or local law enforcement officer, and/or Plaintiff, and/or Plaintiff's duly authorized trademark enforcement team including employees or independent contractors retained thereby, and/or all persons acting under the supervision and control thereof (collectively "Enforcement Officials") are hereby authorized and directed to seize and maintain in their custody and control and all Enjoined Goods and counterfeit marks,[3] and the means of making them, and records documenting the manufacture, sale, or receipt of things relating thereto. . . . All seized items shall be delivered up to the care and custody of Plaintiff or Plaintiff's attorneys pending further instructions from the Court.
> . . . .
> The Enforcement Officials acting hereunder are authorized to carry out the foregoing on the premises or within a five-mile radius of the halls, arenas, stadiums, or other venues where a WWE live event shall be occurring beginning on April 3, 2014 and ending March 23, 2015, from twenty-four (24) hours before any such event begins to twenty-four (24) hours following the completion of said event. . . .
> Defendants shall cooperate with the Enforcement Officials executing such seizure hereunder, shall provide the items sought to be seized wherever such items are maintained and shall provide their correct names, residential and business addresses and telephone numbers.[4]

Plaintiff's proposed order further provides that Defendants must show cause why an order should not be entered granting Plaintiff a "preliminary injunction enjoining

---

[3] "Enjoined Goods" are defined as "Goods that bear any mark, word, or name identical or confusingly similar to any of the WWE Marks or the names or likenesses of any of WWE's current wrestlers."

[4] The remainder of the proposed order is either declaratory in nature or, as discussed below, procedural.

5

Defendants, and all those acting in concern with them, from manufacturing, distributing, offering for sale, or selling and/or raise any objection concerning any seizure effected pursuant to this Order"; effectively requests that a show cause hearing occur fourteen days from any date the Court might sign Plaintiff's proposed order; and asks for service (whether by the U.S. "Marshal, state or local police, local deputy sheriffs, or by any person over the age of 18 who is not a party to this action") of the complaint, summons, and a copy of this order "simultaneously with any seizure made pursuant to this order, or as soon thereafter as is practical under the circumstances."[5]

This proposed procedure, which effectively uses a Section § 1116(d) seizure order to force Defendants to identify themselves (or lose their goods), is superficially appealing but it puts the cart before the horse. The Court may "not grant an application" under Section 1116(d) "unless" requirements dependent on the identity of Defendants are satisfied. Put another way, Plaintiff proposes to use a seizure order to develop the facts necessary to satisfy the statutory prerequisites to issue a seizure order. That is nothing

---

[5] Several of the procedures Plaintiff proposes would, even if issuance of an order like that Plaintiff requests were proper, run afoul of the text of Section 1116(d). For example, orders under that section cease to be effective "not later than seven days after the date on which such order issued," 15 U.S.C. § 1116(d)(5)(C), and "[a]ny materials seized under this subsection shall be taken into the custody of the court," *id.* § 1116(d)(7). Section 1116(d)(9) would also appear to rule out service of the copy of any seizure order as well as the act of seizing goods itself by other than a law enforcement officer.

more than impermissible bootstrapping.  It allows Plaintiff to use the Court to carry out the investigation that the *plaintiff* is supposed to carry out before asking the Court to act under Section 1116(d).[6]  Worse still, it gives Plaintiff a judicial imprimatur, when going around to various vendors at WWE events with its "Enforcement Officials," to determine when and from whom seizure is appropriate.  That is the Court's job under Section 1116(d), not Plaintiff's.

Nonetheless, the Court is sympathetic to Plaintiff's situation.  The evidence before the Court appears to show that some number of persons tend to show up at Plaintiff's events and cannibalize Plaintiff's merchandise sales by purveying unauthorized and sometimes even inferior products.  This is a real harm, and under traditional trademark law, one that can cause irreparable injury to Plaintiff's marks.  Moreover, the Court understands why it might be difficult for Plaintiff to know beforehand the identity of alleged infringers.  As the affidavits Plaintiff's have submitted in support make clear, many bootleggers are fly-by-night operators who vary their

---

[6] Plaintiff could, for example, conduct an investigation using undercover purchases and identify potential defendants and goods intended to be seized (or at least the specific location of any such seizure) using physical descriptions or photographs.  Even if the alleged infringers were to decline to provide details like name, address, and the like and were to flee at the time of seizure, there would at least be a particularized description of the defendant available.

locations and, in any event, flee when confronted.

But Plaintiff's proposed solution—seize what goods Plaintiff decides are counterfeit from what persons Plaintiff thinks should merit a seizure order under Section 1116(d)(4)(B)—runs afoul not just of statutory text, but potentially of limits on the very power of the Court such as ripeness, due process, and personal jurisdiction. Are the present circumstances sufficiently concrete and particular, without any knowledge of who will be acting, to present an actual case or controversy? Or is this more akin to an "obey the law" injunction directed to the general population (or at least the general population of people intending to sell WWE goods near WWE events) at large, lasting for a year and with nationwide effect? Is seizure of specific goods that *Plaintiff*, even accompanied by law enforcement, determines at the time of seizure to be counterfeit (rather than seizure of specific good the Court has independently determined are likely to be counterfeit because "the person against whom seizure would be ordered used a counterfeit mark") consistent with due process?[7] That is, does due process allow the

---

[7] There would, of course, be no problem (or at least none the Court can conjure on its own) with a law enforcement officer seizing such goods based on evidence provided by Plaintiff sufficient for a reasonable law enforcement officer to believe a crime is occurring in his presence. Plaintiff therefore presumably requests this order because it has difficulty convincing law enforcement to makes its needs a priority or in order to insulate itself from the liability that may attach to swearing out criminal complaints against vendors on an *ad hoc* basis should a complaint prove unfounded.

Court to deputize a plaintiff to determine which goods are seizable, all while cloaking Plaintiff in the protection of a judicial order?  How would the Court obtain the personal jurisdiction, whether traditional or *quasi in rem*, over any potential Defendants without ties to Louisiana needed to permit seizures nationwide as Plaintiff requests?

These are difficult questions, and in combination with the text of Section 1116(d), they convince the Court not to exercise its discretion to enter Plaintiff's requested temporary restraining order and seizure order.  This denial is, however, without prejudice to a request for relief that provides "sufficient facts" for the Court to make determinations such as whether "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered," "the person against whom seizure would be ordered . . . would destroy, move, hide, or otherwise make [the objects of seizure] inaccessible to the court," and all other requirements for a temporary restraining order, and specifically, one under Section 1116(d).

As the Court indicated above, it is sympathetic to Plaintiff's dilemma—how can Plaintiff, and many in Plaintiff's situation, such as the NFL, NBA, NASCAR, and touring musicians, gather the "specific facts" necessary for relief when the kind of bootlegger it confronts is a moving target?  Moreover,  a number of district courts have provided relief (albeit without reasons) similar to that which gives the Court pause here.  The Court is

therefore of the opinion that the issues discussed in this order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).[8]

The Court is hopeful that the Court of Appeals for the Fifth Circuit will accept this certification given the prominent role that New Orleans (and other cities in the Fifth Circuit, though the Court must confess a partiality to New Orleans) plays in hosting events where the kind of bootlegging Plaintiff alleges occurs. Additionally, other courts have noted that cases such as this rarely proceed to final judgment because the alleged bootleggers do not appear (whether for legitimate reasons—such being unlawfully intimidated by a process like Plaintiff proposes, inadequacies of notice, or a lack of sufficient financial interest to make presenting even a meritorious defense worthwhile—or the illegitimate reason that they do not wish to defend a suit they are likely to lose). Accordingly, interlocutory certification is perhaps the only method available for Courts of Appeals to provide guidance (which the Court has not been able to find in any circuit) on the kind of relief Plaintiff requests. And although appellate

---

[8] The Court takes the precaution of certifying its order as at least one circuit court has held that the denial of a request for a seizure order under Section 1116(d) is not immediately appealable. *In re Lorillard Tobacco Co.*, 370 F.3d 982, 986 (9th Cir. 2004).

proceedings on even an expedited basis may not conclude before Wrestlemania XXX begins, they can be concluded before the end of the one-year period of relief Plaintiff seeks.[9]

What remains is Plaintiff's request that its complaint, motion, supporting documents, and this order be filed under seal. Part of the reason for the vacuum of reasoned authority in which the Court confronts Plaintiff's problem is the apparently almost reflexive tendency of courts to seal similar proceedings. Two interests are protected by that tendency. The first is codified in Section 1116(d), which allows courts to protect "the person against whom an order under this section is directed from publicity, by or at the behest of the plaintiff." 15 U.S.C. § 1116(d)(6). But as the Court orders no seizure, no Defendant need worry about being wrongfully identified as a counterfeiter. The second interest is Plaintiff's interest in preventing bootleggers from spiriting away their goods before they can be seized.[10] The Court therefore sees no reason to seal the record in this proceeding.[11]

---

[9] The Fifth Circuit may, of course, also provide any interim relief it decides is appropriate during the pendency of any appeal.

[10] If seizure orders merely deterred wrongful conduct, no plaintiff would have such an interest. But such orders may also simply drive bootleggers further underground.

[11] This Court's denial of the motion to seal may affect the exposure of sealed material issued by other courts and submitted by Plaintiff in support of its

Indeed, there is good reason not to seal this proceeding.  As the John Does have not appeared, and based on Plaintiff's affidavits, would not have been likely to appear even if the Court had issued a seizure order, this Court has had to decide Plaintiff's request without the benefit of an adversarial proceeding.  While that is always true of a request for *ex parte* relief, the numerous difficult problems Plaintiff's request presents would benefit from input by a representative of Defendant's interests, which the Fifth Circuit could consider appointing.  Failing that, perhaps by resolving the issues in this order in the light of day, currently unrepresented stakeholders (and interests, such as academics and Congress) might seek amicus status or to intervene.

As a final matter, the Court wishes to acknowledge the efforts of Plaintiff's counsel.   The Court finds that this matter is complex, and although it has had to be decided on an expedited basis, counsel attempted to provide the Court as much time and assistance as possible and was responsive to the Court's inquiries.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for a temporary restraining order, order

---

arguments.  If Plaintiff has submitted orders that remain sealed (and provided it is proper for this Court to see those sealed documents), Plaintiff shall identify the sealed material no later than April 2, 2014, at 4:00 p.m., providing an index of the material that must remain filed under seal.  The Court will then docket Plaintiff's filings accordingly, ensuring that any sealed material remain sealed pending appellate review.

for seizure of counterfeit marked goods, and order to show cause why a preliminary injunction should not issue is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to seal is **DENIED**.

**IT IS FURTHER ORDERED** that this order is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff is reminded that if it desires to appeal it must make application with the Fifth Circuit within 10 days from the date of this order under 28 U.S.C. § 1292(b).

New Orleans, Louisiana, this 1st of April, 2014.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE